Thank you, Your Honor, and good morning to both Your Honors and Your Honor in Seattle. My name is Jason Sirr, Federal Defendant of San Diego. I represent Mr. Crote, whose last name appears as Sainez. I refer to him as Crote in the briefs. That's what I'll do here today. All right. This appeal presents Your Honors with two issues, one legal and one a mix of law and fact, both of which, in our view, bar extradition in this case of Mr. Crote from the United States to Mexico. The first question is whether extradition is barred by the five-year statute of limitations under U.S. law at 18 U.S.C. 3182. The answer is yes. There are several reasons for it, which I'll go into in a moment, but the second question is also whether competent evidence existed to support the lower court's finding of probable cause. The answer, we believe, is no, that there was insufficient evidence to demonstrate probable cause in this case. Unless the Court would otherwise prefer, I'll begin with my first issue, the statute of limitations. As the Court is aware, the treaty between the United States and Mexico provides for an analysis into the statute of limitations law for both the requesting state and the requested state. The United States being the requested state means that the United States statute of limitations law determines whether or not Mr. Crote would be acceptable to make a court-defined compensation. Counsel, the question I have in this case is why didn't the issuance of the Mexican warrant toll the statute of limitations? There are three reasons for it. First, as we set out in the brief, 3182 doesn't provide for tolling under U.S. law based on the issuance of any foreign document, such as an arrest warrant issued by a foreign government or a state, in Mexico in this case. That's the first argument we present. You look at the plain language of the statute and it's not there. You either need an indictment or you need an informational consent of the defendant to be issued in order to toll the statute. Yes, but the statute of limitations, the U.S. statute of limitations wasn't designed in mind, with foreign proceedings in mind. That's what tells us when our proceedings are tolled. Correct. Well, what was Mexico supposed to do, change its procedures? No. When Mexico in the U.S. entered into this treaty, Mexico understood that the treaty required a lot of detail. A lot of detail was analysis under U.S. law of what requirements it had to meet in order to toll the statute. So that Mexico was supposed to anticipate that if it issued a warrant in Mexico under its proceedings, and at some point in the next five years before it could physically take possession of the charge, he comes into the United States, then it would have to go back and issue either an information or an indictment? I think that would be up to the treaty drafters and maybe they could more artfully do it. But it's sort of silly, isn't it? It may seem that way, but when you take a look at what the treaty requires in order to do legal work. What would be served by that? And why would a treaty require a country to change its procedures in anticipation of somebody being charged under its laws escaping to another country? I don't think there's any requirement that they change procedures. The countries, when they negotiate it, and this is up to the executive branch, could have negotiated, as I indicated earlier, a treaty that's worded differently to provide for alternate ways of tolling. Okay. But why isn't the arrest warrant issued by a judge in Mexico the equivalent of a prosecutor's information? Well, procedurally, they're vastly different documents. Obviously, it's not as — How about substantively? Substantively? Well, it's not issued by a grand jury, and it's not — That's procedure. It's not testimony presented by witnesses who are called before the grand jury to testify. Okay. But that would be the indictment. What about the information? In this case? In any case. In any case. We don't have the information in this case, but regardless of the person, wouldn't he have consent to do it? So if you don't have consent — No, but the question is, how does it differ? How does it — does it differ from the information? Well, it's more akin to what you just said on our briefs. Under U.S. procedure, what does an information require under U.S. procedure? Consent of the defendant to agree to waiting for the indictment by a grand jury, and agree to go forward based on a conception, essentially, of probable cause that certain offenses may be triggered. That's not what we have here. It's Mr. Cook. They never — And that rule — That's right. That rule — Yeah, how do you deal with the restatement third of Foreign Relations Section 476, which seems to suggest that if an arrest warrant or indictment issues within the limitations period, that that's okay? Isn't that what that language says? That is what that language says, Your Honor. However, the restatement, I would point out, isn't binding authority. It also isn't based on any legal cases or any sort of legal analysis. That's what we're presenting here. I remember the restatement's not subject of law. It's supposed to be a restatement of it. But, you know, sometimes the ALI goes off the rails. Sometimes it's right. But what do we have here in terms of what the Ninth Circuit precedent has relied on that restatement? In other words, do we have to rely on it because other Ninth Circuit cases have? My answer would be no, and there's only one Ninth Circuit case that I'm aware of that even cited it, and it cited an alternate section of the restatement. So my position is that because the particular section of the restatement, Your Honor, quoted from wasn't relied on or discussed with any precedent, I don't think you have to defer to any precedent because it wouldn't be in it. Okay. Thank you, Your Honor. I think I can get to the case, Your Honor, so I can follow where the issues are here. And I think the narrowest way Mr. Korte can win, and you can bring relief, is if you hold that a foreign arrest warrant, such as the one in this case, could be considered for purposes of public, and you would agree with the restatement. The restatement talks in general terms. It doesn't say all treaties. When it analyzes the subject, it talks about some treaties. What I would propose to Your Honors is the following. If you're going to hold a foreign arrest warrant or any sort of foreign document produced in that country's procedural system or procedure rules, what I would say is you need to look at that foreign country's law with regards to how that document would affect its own statutory limitations. And that's the problem the government has in this case here. The Arr. 85 specifically says, issuance of the Mexican arrest warrant by the Court of Justice does not hold the statute of limitations. Simply stated, only an arrest will do so. Article 85 is very clear in its wording. It's not ambiguous, and it really is not subject to any sort of debate, so the Court could avoid all the problems that it talks about in Imani with having to interpret foreign procedure and not wanting to step on the toe. So your argument, then, is that the statute of limitations is told under Mexican law? The statute of limitations is not told under Mexican law because the only time the statute of limitations has run for Mexico to bring the proceedings, is what you're arguing. Under U.S. law, correct. Okay, I'm missing. You're mixing Mexican and U.S. law here, so. Right. If Your Honors are going to use the foreign arrest warrant from Jalisco to determine whether or not to tell the U.S. statute of limitations, you cannot use that document to tell the U.S. statute of limitations when the same document doesn't tell the statute of limitations in the requesting State. In other words, you infuse the foreign arrest warrant here with an authority and a power and an effect it doesn't have in Mexico in the State of Mexico. So counsel, is it your position that if someone absconds in Mexico, the statute of limitations continues to run? According to Mexican law, yes. But if a person absconds, the courts here are free to make a finding that the nation is due to the statute. The magistrate court here specifically held that was not the case and that the government, in fact, did not meet its burden in proving that Mr. Corte was due to the statute. But that was under United States law, right? Correct. Not under Mexican law. Right. In fact, I'm not aware of any case of law in Mexico, and I think that's why the statute of limitations may be. I'm still just a little confused about your argument. The statute of limitations hasn't run for purposes of Mexican prosecution here. Correct. And we're not contesting that it has. Okay. And if he had been indicted in the United States, the statute of limitations wouldn't have run for him in the United States either. It would have told the court to run. Okay. So what's the problem? The arrest warrant under Mexican law doesn't tell the statute of limitations there. And under a rule of noninquiry, you can't question the foreign procedures of the requesting State. And by claiming the arrest warrant in this case somehow holds our statute of limitations, you're really questioning and contradicting what the Mexican law requires. Does that warrant clarity by way of statute of limitations? It would really narrow the number of cases that would really work to the advantage of something like Mr. Corte. I'd point out, first, that the court in Jalisco ordered the prosecutor's office there to actually go and make efforts to try to find and locate Mr. Corte, which they did not do. They had information about where he lived in California. They talked to witnesses who were very familiar with him, and it's set forth in the note. But the court's not to do that. By referring the statute this way, it protects Mr. Corte's due process rights to be able to investigate and present a defense in Mexico without scale, evidence, without court memory. And that really is too bold, obviously, to set limitations. But under a rule of non-inquiry, you question the Mexican decision with regard to how the warrant operates without the statute of limitations. All right, counsel, you've exceeded your time. We'll give you a minute or two for rebuttal. And we have read your brief rebuttal on the other issue. All right. Good morning, Your Honors. May it please the Court. Christopher Tenorio for the appellee. The appellate in this case is asking this Court to do exactly what the rule of non-inquiry says, and that is to go into the procedures of the Mexican law and apply it here to the U.S. law. Now, we don't have to go that far. The government of Mexico has complied with the explicit requirements of the treaty, the U.S.-Mexico Extradition Treaty. What that treaty requires is that Mexico provide a warrant of arrest, and that is where the issue of the warrant of arrest comes. They provide it to certify popular doubt. The U.S., by rules of comedy, have to accept that in order to stop the statute of limitations here. Now, it's important to keep in mind that the extradition hearing is a civil proceeding. It's not criminal in nature. We don't apply our criminal rules of procedure. We don't apply the criminal law. In fact, the level of the burden of proof, as we know in the other issue, is much less. What Article 10, Paragraph 3 of the treaty provides is that the requesting country must provide certified copy of the arrest warrant and evidence sufficient to apprehend and commit the requested person to trial. It does not require formal charges. Now, that is on all fours with the Amami case that this Court has decided. In that case, they were reviewing the German treaty, the German-U.S. treaty, and by implication the Eleventh Circuit's Sarsen case, which reviewed the Swedish treaty. And in those, it actually mentioned that they could only extradite a person who is charged. And the question was, does the verb charged implicate the noun charges or formal charges? And this Court found that it did not. In fact, the Amami court said that it can review the existence of formal charges only if the treaty conditions extradition on its existence. The U.S.-Mexico treaty does not. All it requires is the arrest warrant. Whether the state of Jalisco requires an arrest to stop its statute of limitations is of no moment. The contract here is between the countries of Mexico and the country of the United States. Was the treaty in Amami the same? Did it have the same language as the treaty with Mexico? Very, very similar. It was with Germany, and it required almost identical information required, namely a certified copy of the arrest warrant and evidence sufficient to apprehend and commit the person to trial. I'd posit that the German treaty was actually even more restrictive because it says the person has to be charged, and that's not required here. And that's the same with the Swedish treaty. Because of the Amami case, we can't even look to the formal charges where they even exist. They're not required. There is no problem with the Mexican law as far as the statute of limitations are concerned. Here, the arrest warrant serves as the accusatory instrument or the functional equivalent of what we'd need in the criminal context. But this is the civil context. And it stands for a reason because, of course, the United States does not have the evidence that Mexico does in order to obtain formal charges. But what it does have is the commitment to Mexico and the strict terms of the treaty to provide extradition where there is an arrest warrant, and nothing more than that. Now, to do otherwise, it's asking us to look not only into the application of the Mexican law, but the application of the Mexican law to the United States law. And not even that. Go one step further. Not even the application of Mexican law, but the law of the individual state of Jalisco, which does not necessarily represent all of the country of Mexico. So by doing so, we'd be impermissible both under the Amami case and under the strict terms of our treaty. Counsel, would you respond to opposing counsel's argument regarding why the restatement should not be considered as persuasive authority in this case? Well, I think it is certainly persuasive. It has been recognized explicitly as such by some of the sister circuits, the Third Circuit in particular and the Eleventh Circuit. And what they are doing is recognizing the longstanding law throughout the country that represents, depending on the individual treaty, the individual country that produced the treaty, we have to look at what the accusatory instrument is, whether that be an arrest warrant or formal charges or otherwise. But I think what it does is persuasive in the sense that it sends us back to the terms of the treaty itself and that here in Mexico requires the arrest warrant. Did you want to address the probable cause issue? Certainly. Thank you, Your Honor. The issue of probable cause, Your Honor, this Court is to review for not probable cause any longer, but competent evidence. And this Court's cases have said that the district court's finding of probable cause must be upheld if there is any competent evidence in the record to support it. Now, what that requires is merely the identification of any evidence that is competent, and competent evidence is authenticated evidence. In other words, the evidence that has been sent over from Mexico that has been certified by the U.S. representative there, meaning the attorney attache in this case. And that's what happened here. The attorney attache, as the Expedition Church recognized, certified the evidence. Based on that, there was no factual determination to be made by the Expedition Church. It only needs to be authenticated and, therefore, is sufficient here. Based on that, Your Honor, we believe because there is sufficient evidence, because there is enough of the identification of Mr. Cuote as the shooter, it would be sufficient to bind him over to trial, even in the United States. It certainly was sufficient as a matter of law before the courts below. All right. Thank you, counsel. Any other questions? Thank you very much. We're bought off. To respond to two points Mr. Tonorio made, one, he said that you look at what the accusatory instrument is. So he really, while claiming the rule of non-inquiry prevents the court from doing so, he's asking you to do that at the exact same time. And we know the accusatory instrument in this case is the political arrest warrant, so you have to look at what the Mexican law does with regard to that warrant. Well, that doesn't compel you to look into the process or the procedure that the Mexican court uses. I'm not even asking the court to look into the process or procedure. It's already set out in Article 85. It just identifies the effect of the warrant. So even if the court were to say we're not going to look at the process and procedure of how this warrant is obtained and we're simply going to use the warrant as one of the signposts to determine statute of limitations and whether or not the statute of limitations has run. All it requires is you look at Article 85 and you know that the warrant was pulled to statute of limitations in Mexico. It doesn't require any more analysis. You don't have to look at what the issuing court has done, the evidence it's looked at. It doesn't require any sort of analysis whatsoever by way of judgment. It is simply application of a clear, long-standing principle in Mexican law. And I've remarked here, obviously, I've been screwed liberally in favor of proposed statute of limitations, as I've pointed out. And just briefly, that's on the competent evidence issue. It's known as competent evidence equals authenticated evidence. That isn't exactly true. It would really stand the whole probable cause finding on its head and make it essentially a rubber stamp for any court reviewing it. Competent evidence is evidence that's got some reliability to it and points to the elements of an offense. So are you arguing that the evidence that was presented was not reliable? I am, and that's what I set forth in my brief. For example, if it were true that simply authenticating evidence, such as declaratory statements by witnesses, were sufficient to make it competent, what would happen if a witness initially identified someone as an aggressor or shooter in a murder case and specifically said, I saw that person shoot that other person? And then later they come back and they say, well, you know, I'm not quite sure whether or not he was the person who did the shooting. But we don't make that determination in deciding whether or not extradition was proper. That's already been done. Well, you have to assess whether or not there was competent evidence to demonstrate probable cause. And simply saying it's authenticated doesn't do it. Well, that's just a conflict in the evidence. That's a determination as to whether you blew the first declaration or the second declaration. That doesn't make it unreliable necessarily. If there's a third declaration that says, in fact, now that I've thought about it, reflected, he's not the shooter. Shooter had longer hair, no hair, facial hair. We get that all the time when people recant their testimony. Then we have to decide or the trier of fact has to decide which is most believable. That's not unusual in the law. And it's done at a bindle. And there has to be an assessment as to the reliability of the evidence. That's what would determine whether it's competent, not whether it's simply authenticated. If someone conflicted themselves over and over again in a single statement, could we call that competent evidence? Or it would simply be something that's unreliable. So I just agree with the point that competent evidence is simply authenticated evidence. That would undermine the whole idea of a court reviewing the evidence. We understand your argument. Any questions? Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Gould, Rawlinson, Bybee